**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | § | |
|---|---|---|
| IN RE: | § | CASE NO: 19-11903 |
| | § | |
| FRED BRENT HOGGATT | § | CHAPTER 13 |
| LISA MARIE HOGGATT, | § | |
| | § | SECTION A |
| DEBTORS. | § | |

## MEMORANDUM OPINION AND ORDER

This Court held an evidentiary hearing on January 30, 2020, to address the *Objection to Confirmation of Plan* ("PPW's Objection"), [ECF Doc. 58], filed by creditor Parker Price and Wolfe, Inc. ("PPW") and the *Debtors' Response to Objection to Confirmation of Plan Filed by Parker, Price & Wolf[e]* ("Debtors' Response"), [ECF Doc. 59], filed by Fred and Lisa Hoggatt (together, the "Debtors"). PPW objects to the Debtors' valuation of their immovable properties and the consequent treatment of its mortgage claim as unsecured. Attorney John D. Allen appeared on behalf of PPW, and Attorney Mary L. DeVun on behalf of the Debtors. One of the Debtors, Mr. Hoggatt, testified as a witness, and the Debtors also provided several documents as exhibits. At the conclusion of the hearing, the Court took the matter under advisement.

Now, after considering the arguments of counsel, the witness's testimony, the exhibits, and the remainder of the record before it, this Court determines that PPW has not carried its burden in objecting to its treatment as an unsecured creditor in the Debtors' plan of reorganization. Therefore, and for the reasons discussed more fully below, the Court OVERRULES PPW's objection.

1

**JURISDICTION AND VENUE**

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334 and the Order of Reference of the District Court dated April 11, 1990. The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b).

**NOTICE**

Notice of both PPW's Objection and the Debtors' Response was sufficient and constituted the best notice practicable. All persons affected by this Memorandum Opinion and Order were afforded a full and fair opportunity to be heard prior to and during the evidentiary hearing. Notice of the relief granted herein has been given to all persons affected by this decision and is in full compliance with due process.

**FINDINGS OF FACT**

The Debtors filed for bankruptcy relief under chapter 13 of the Bankruptcy Code on July 16, 2019. The Debtors own three pieces of immovable property at issue in the matters currently before the Court.[1] First, the Debtors own as community property their residence at 41257 Houston Creel Road, Franklinton, Louisiana (the "Residence"). [ECF Doc. 3]. Second, Mr. Hoggatt owns as his separate property approximately 17 acres of undeveloped land in Washington Parish, Louisiana (the "17 Acres"). [ECF Doc. 3]. Third—and, for the purpose of the matters here before

---

[1] At the time of filing, the Debtors also included in their schedules a fourth piece of property at 1304 Washington Street, Franklinton, LA. [ECF Doc. 3]. That property, Mr. Hoggatt's testified, served as his business property and has already been sold at a state-law foreclosure sale. *See* Hr'g Tr. 18:00–18:07. Therefore, it is no longer property of the estate and is not implicated in the present dispute between the parties.

2

the Court, finally—Mr. Hoggatt also owns as separate[2] property another tract of approximately 15 undeveloped acres contiguous with the 17 Acres (the "15 Acres").[3] [ECF Doc. 3].

PPW represents that it holds two different promissory notes signed by Mr. Hoggatt on November 3, 2017, in the original and principal sums of $80,000 and $10,000. [ECF Doc. 58]. Movant asserts that both loans are in default with $80,000 and $8,200 due, respectively, plus reasonable attorney's fees. [ECF Doc. 58]. Both notes, PPW further states, are secured by mortgages on Debtors' immovable property. Hr'g Tr. 15:39–15:50; [ECF Doc. 58]. But PPW has not filed a proof of claim for either amount nor has it provided copies of those promissory notes or security agreements for this Court, either at the hearing or elsewhere in its filings.

Though the Debtors do not challenge the validity or amount of those debts, *see* Hr'g Tr. 15:06–15:15, the parties do dispute which, if any, of the Debtors' properties are encumbered. PPW contends that both of its mortgages are secured by all three properties listed above: the Debtors' Residence, the 17 Acres, and the 15 Acres. Debtors, however, contend that the lien on the Residence is invalid, and that the 17 Acres and 15 Acres are already fully encumbered by superior liens.

As to their Residence, Mr. Hoggatt testified that he signed the mortgages with PPW, but that his spouse, Mrs. Hoggatt, did not. Hr'g Tr. 15:39 –15:50. In the Debtors' Response, they rely

---

[2] Though Debtors' Response states that the 15 Acres is held in community, Mr. Hoggatt testified that it is his separate property, Hr'g Tr. 15:21–15:39, and the Debtors' initial schedules similarly reflect that it is held separately, [ECF Doc. 3].

[3] This information about the Debtors' immovable property is based on their originally filed Schedule A/B and Mr. Hoggatt's testimony. When the Debtors amended their Schedule A/B on October 16, 2019, they did not list ownership of any immovable property. [ECF Doc. 55]. However, considering Mr. Hoggatt's testimony that the 17 Acres and 15 Acres remain his separate properties, *see* Hr'g Tr. 13:30–14:05, as well as the representations in the Debtors' Response, the Court believes that the omission of the properties from the amended Schedule A/B is mostly likely erroneous and that Debtors will amend their schedules to correct.

on Louisiana Civil Code Article 2347 to argue that PPW therefore does not have a valid lien over the Debtors' community property, which includes the Residence.[4] As evidence in support of that conclusion, Mr. Hoggatt testified about and the Debtors provided a copy of a preliminary injunction issued by the 22nd Judicial District Court for the Parish of Washington on April 12, 2019, in case number 112739, *Parker Price & Wolfe, Inc. versus H & H Gunshop, LLC and Fred Brent Hoggatt*. [Ex. 3]. In that state court's one-page Order following a hearing on a preliminary injunction, that court, without further reasoning, enjoined PPW from seizing or selling the Debtors' Residence in payment of PPW's promissory notes. [Ex. 3]; Hr'g Tr. 16:02–16:35. PPW did not objection to the admission of the state court's Order as evidence. Mr. Hoggatt testified that there have not been any further orders in that state court case concerning their property or PPW's liens since then. Hr'g Tr. 16:36–16:48.

The Debtors then, through Mr. Hoggatt's testimony and an exhibit provided to the Court, presented evidence concerning the value of the two other properties, the 17 Acres and 15 Acres that Mr. Hoggatt holds as his separate property. The Debtors commissioned an appraisal from a private company, Hartzog and Associates Appraisers, which was completed December 17, 2019. [Ex. 1]; Hr'g Tr. 13:34–14:08. Considering both plots of land together as one 31.92-acre tract, Hartzog and Associates determined that the properties together have a combined market value of $88,500. [Ex. 1]. Debtors offered the full appraisal report at the hearing, PPW did not object to its admission, and the Court admitted it into evidence. [Ex. 1].

PPW, in its Objection and in counsel's arguments at the hearing, referenced a prior Sheriff's appraisal that, according to their Objection, valued the 17 Acres at $73,000 and the 15

---

[4] "The concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovables." LA. CIV. CODE ANN. art. 2347.

4

Acres at $64,411.80. [ECF Doc. 58]; Hr'g Tr. 9:40–10:06. But that Sheriff's appraisal was not attached to PPW's Objection. Nor was the Sheriff's appraisal, or any testimony about its estimates, offered at the hearing or otherwise made a part of the record before this Court. Ultimately, PPW provided no evidence of any competing assessment of the properties to rebut the private appraiser's methods or challenge their reliability. Accordingly, for the purposes of resolving PPW's Objection, this Court accepts the Debtors' uncontradicted valuation of $88,500 as the true and accurate value of the 17 Acres and 15 Acres combined.

The Debtors also produced a mortgage certificate issued by the Deputy Clerk of Court and the Ex-Officio Recorder of Mortgages in Washington Parish, Louisiana, that lists all "mortgages, liens, judgments, or other instruments" encumbering the 17 Acres as of November 11, 2019. [Ex. 2]. That certificate includes a record of a Collateral Mortgage issued to Gulf Coast Bank and Trust Company in the original principal amount of $285,000, dated June 10, 2013. [Ex. 2]. Mr. Hoggatt similarly testified that he believed Gulf Coast had a lien on this property for approximately $276,000, Hr'g Tr. 10:45–10:50, and the Debtors' Schedule D estimates that Gulf Coast has a claim for $260,000, [ECF Doc. 3].[5] Consistent with this information, Gulf Coast Bank filed Proof of Claim No. 22, asserting $190,955.76 in mortgage debt. As an attachment, Gulf Coast Bank provided a copy of its recorded Mortgage Agreement with the Debtors granting it a security interest in the 17 Acres. [Claim 22-1]. In addition to other liens, the mortgage certificate also documents

---

[5] Debtors' Schedule D lists the Gulf Coast claim as being secured by "32 acres," which this Court believes is an intended reference to both the 17 Acres and the 15 Acres. [ECF Doc. 5]. At the hearing, Debtors' counsel asked Mr. Hoggatt to confirm that she sometimes conflates or confuses the 17 Acres and the 15 Acres; Mr. Hoggatt testified that this is indeed the case. Hr'g Tr. 15:20–15:38. Based on that testimony and the security documents attached to Gulf Coast's Proof of Claim No. 22, it appears that the designation in Schedule D is an error, and that Gulf Coast's mortgage is secured by the 17 Acres, but not the 15 Acres. Therefore, for the purposes of resolving this matter only, the Court determines that Gulf Coast's claim is secured by the 17 Acres but not the 15 Acres.

that two mortgages on the 17 Acres were subsequently granted to PPW on November 3, 2017, one for $10,000 and the other for $80,000. [Ex. 2].

Mr. Hoggatt also testified that "the other piece of property" had a mortgage on it with Citizens Savings Bank for around $20,000. Hr'g Tr. 18:35–46. Consistent with that representation, Citizens Savings Bank has filed Proof of Claim No. 8, asserting a claim against the estate for $19,797.27, with an attached security agreement purporting to encumber the 15 Acres.[6]

## CONCLUSIONS OF LAW

"A creditor objecting to confirmation has the initial burden of proof in supporting its objection." *In re Blevins*, 150 B.R. 444, 446 (Bankr. W.D. Ark. 1992) (overruling creditor's objection to confirmation when creditor submitted "no credible evidence concerning valuation"); *see also* 5 COLLIER ON BANKRUPTCY ¶ 1324.01 (16th ed. 2019) ("Generally, the burden of going forward with evidence and the ultimate burden of proof is borne by the party objecting to confirmation"). Here, PPW has made conclusory assertions that it holds secured claims against the Debtors' property, but has not provided any evidence of those security agreements. PPW did not offer any mortgage agreements with the Debtors as evidence at the hearing, nor has it otherwise made them a part of the record before this Court. PPW also has not filed a proof of claim. Because there is no evidence before this Court that PPW has a valid, perfected security interest in the Residence or the 15 Acres, the Court concludes that PPW has not met its burden of supporting its

---

[6] Debtors' Schedule D lists this debt as secured by the 17 Acres, not the 15 Acres. Both the Mortgage Certificate and Citizens Savings Bank's proof of claim, however, indicate that Citizen Savings Bank's mortgage over the 17 Acres was released, but that it retains a security interest in the 15 Acres. [Ex. 2]; [Claim 8-1]. As stated above, the Debtors' counsel has confessed—and Mr. Hoggatt verified in his testimony—that she gets these two pieces of property confused. Hr'g Tr. 15:20–15:38.

objection to the Debtors' treatment of its claim as unsecured by those two properties in their proposed plan of reorganization.[7]

The only evidence before this court that PPW has a lien on the Debtors' immovable property comes from the Mortgage Certificate provided by the Debtors. That document does reflect that PPW holds two mortgages, both executed on November 3, 2017, that are secured by the 17 Acres. But it is well established that a creditor is secured "only to the extent of the value of the collateral; its claim over and above the value of the [collateral is] unsecured." *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 956 (1997) (citing 11 U.S.C. § 506(a)). "In general, the amount of debt secured by senior liens must be deducted in determining the extent to which a junior creditor holds an interest in the estate's interest in the collateral and, hence, the extent to which the junior creditor holds a secured claim." 4 COLLIER ON BANKRUPTCY ¶ 506.03 (16th ed. 2019); *see also In re Union Meeting Partners*, 178 B.R. 664, 677–78 (Bankr. E.D. Pa. 1995) (calculating amount of secured lien by subtracting the value of prior liens from the value of the property serving as collateral).

Here, PPW has provided no evidence to dispute the Debtors' representations that the 17 Acres is fully encumbered by a superior lien, and therefore, that the entire amount of PPW's claim should be treated as unsecured in the plan under § 506(a). As the Mortgage Certificate reflects and Mr. Hoggatt's testimony similarly represented, Gulf Coast has mortgage lien on this same property in the principal amount of $285,000. Gulf Coast's proof of claim declares that $190,955.76 of this is still due and owing, and is secured by the 17 Acres by mortgage recorded June 11, 2013, four years before Mr. Hoggatt signed with PPW. [Claim 22-1]; *see also* LA. STAT.

---

[7] Accordingly, this Court declines to address, among other issues, whether article 2347 of the Louisiana Civil Code would prohibit PPW from encumbering the Debtors' Residence without Mrs. Hoggatt's signature.

ANN. § 10:9-322 ("Conflicting perfected security interests . . . in the same collateral rank according to priority in time of filing or perfection").[8]

PPW, similarly, offers no evidence to contradict the appraisal that the Debtors commissioned for the 17 Acres and did not object to the appraisal's admission as evidence. Notably, the appraisal in question considered the 17 Acres and 15 Acres in combination, and no testimony or other evidence addressed what portion of that value was attributable to the 17 Acres.[9] This Court can at least be certain, however, that the Debtors' evidence represents that the 17 Acres is worth no more than $88,500, the value of the two properties combined. As noted, other than referencing a Sheriff's appraisal that this Court has not been given a chance to see or evaluate, PPW did not provide any basis to question the Debtors' professional appraisal. Based on that uncontradicted evidence that the amount of a superior lien on the 17 Acres already exceeds the value of the property, we conclude that PPW has failed to support its Objection to treatment as an unsecured creditor in the Debtor's proposed plan of reorganization.

## CONCLUSION

For these reasons, PPW's Objection is OVERRULED. The Debtors are instructed to amend their schedules and plan as necessary to reflect their most recent knowledge of their property and the claims against the estate. This Court reserves determination on confirmation of

---

[8] This Court does not, at this time, make any determination of the validity, amount, or allowance of Gulf Coast's claim or any other claim against the estate. The Court determines only that PPW provided no evidence to rebut Debtors' representation that this superior lien fully encumbers the property.

[9] A *pro rata* estimate that assumes each acre is worth 1/32 of the $88,500 total would place the value of the 17 Acres at approximately $47,000. However, this Court did not receive sufficient evidence to support a conclusion that the undeveloped land in the two tracts is of uniform value. *But see* Hr'g Tr. 14:07–14:13 (Mr. Hoggatt's testimony, before using the appraisal to refresh his memory, that the properties were valued at "about $2,500 *per acre*" (emphasis added)).

Debtors' chapter 13 plan for the confirmation hearing currently scheduled for Wednesday, March 11, 2020.

New Orleans, Louisiana, March 3, 2020.

                                      MEREDITH S. GRABILL
                                 UNITED STATES BANKRUPTCY JUDGE